IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0235-WJM-STV

ANDERSEN MANUFACTURING INC.,
an Idaho corporation,

    Plaintiff,

v.

WYERS PRODUCTS GROUP, INC.,
a Colorado corporation,

    Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND JUDGMENT

Plaintiff Andersen Manufacturing, Inc. ("Andersen"), brought this suit against Defendant Wyers Products Group, Inc. ("Wyers"), for patent infringement. The inventions at issue are an adjustable-height trailer hitch made from aluminum, as described in U.S. Patent No. 7,156,412 ("412 Patent"); and a process for manufacturing that hitch, as described in U.S. Patent No. 7,222,510 ("510 Patent"). The Court entered final judgment in Wyers's favor on February 7, 2019. (ECF No. 115.)

Currently before the Court is Andersen's Motion to Amend Judgment. (ECF No. 119.) Despite the motion's title, Andersen asks the Court to *vacate* judgment under Federal Rule of Civil Procedure 60(b)(6), thus permitting this case to proceed against Wyers for infringement of the recently reissued (and heavily amended) version of the 412 Patent. For the reasons explained below, the Court denies this motion.

## I. LEGAL STANDARD

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for [six] reasons[.]" Fed. R. Civ. P. 60(b). The first five reasons are scenarios that arise with enough frequency to be specifically called out (*e.g.*, excusable neglect, newly discovered evidence, satisfaction of judgment). *See* Fed. R. Civ. P. 60(b)(1)–(5). Then Rule 60(b)(6) permits a court to grant relief for "any other reason justifying relief." While relief under the five enumerated clauses of Rule 60(b)(1)–(5) is "extraordinary and may only be granted in exceptional circumstances," "Rule 60(b)(6) relief is even more difficult to attain and is appropriate only when it offends justice to deny such relief." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231–32 (10th Cir. 1999).[1]

Ultimately, all Rule 60(b) motions are addressed to the sound discretion of the trial court. *Zimmerman v. Quinn*, 744 F.2d 81, 82 (10th Cir. 1984).

## II. BACKGROUND

This case began in January 2016 in the United States District Court for the District of Idaho, the Hon. B. Lynn Winmill presiding. (ECF No. 1.) In May 2016, Wyers filed with the U.S. Patent and Trademark Office ("PTO") a request for *ex parte*

---

[1] In *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) (en banc), the Tenth Circuit described Rule 60(b) generally as "a grand reservoir of equitable power to do justice in a particular case." *Id.* at 722 (internal quotation marks omitted). Andersen characterizes this quote as directed at Rule 60(b)(6) specifically. (ECF No. 119 at 7; *see also id.* at 1.) It is not, but Andersen cannot be entirely faulted for that error. For unclear reasons, a later Tenth Circuit decision, quoting *Pierce*, announced that "Rule 60(b)(6) has been described as a 'grand reservoir of equitable power to do justice in a particular case.'" *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996). *Cashner* went on to *reverse* a district court's grant of 60(b)(6) relief, so *Cashner*'s overbroad characterization of *Pierce* is dicta. All that said, the Court does not doubt that *when Rule 60(b)(6) relief is appropriate*, the Court has broad equitable powers to do justice in the particular case.

reexamination of the 412 Patent. (ECF No. 28-1 at 3; ECF No. 29-2 through 29-9.)[2] Shortly afterward, Wyers moved for a stay of the lawsuit pending the outcome of the reexamination. (ECF Nos. 28, 28-1.) Andersen opposed, arguing that whether the PTO would grant Wyers's request remained speculative, and, in any event, Wyers's request for *ex parte* reexamination (as opposed to *inter partes* review) would not definitively resolve anything because the results of *ex parte* proceedings may be re-litigated in court. (ECF No. 34 at 2–3.) Andersen further asserted that "reexaminations could take five years or more," and so a stay "would be highly prejudicial" due to the delay." (*Id.* at 3; *see also id.* at 10 ("Although[] the Patent Office resolves 95% of *ex parte* reexaminations within 25 months, if there is an appeal to the Patent Trial and Appeals Board or the Federal Circuit, the reexamination can take much longer.").)

In August 2016—before Judge Winmill ruled on the motion to stay—Andersen informed the Court that the PTO had rejected Wyers's reexamination request. (ECF No. 41.) Broadly speaking, the PTO found that the request was insufficiently specific, and it gave Wyers an opportunity to resubmit. (ECF No. 41-2 at 2–12.)

In September 2016—still before a ruling from Judge Winmill—Wyers informed the Court that it had resubmitted to the PTO. (ECF No. 42.) Later that same month, Wyers informed the Court that the PTO had granted the resubmitted reexamination request. (ECF Nos. 45-1, 45-3.) Andersen responded that it still opposed to stay because "[r]esolution of the reexamination including any appeal could take five years or more." (ECF No. 49 at 1–2.)

Judge Winmill denied the motion to stay in December 2016. (ECF No. 55.) He

---

[2] All ECF page citations are to the page number in the CM/ECF header, which does not always match the document's internal pagination.

reasoned that "[m]ost of these reexaminations, including the inevitable appeal to the Patent Trial and Appeal Board, take three to five years to resolve" and "the simplification of issues is not automatic because if the patents survive, Wyers will be able to relitigate the issues here because it requested an *ex parte* reexamination, which has no preclusive effect." (*Id.* at 1.)  In addition, Judge Winmill noted that the parties had fully briefed claim construction and were due to appear the following week for a claim construction hearing.  (*Id.* at 2.)

In April 2017, Wyers again moved to stay, noting that the PTO had (in nonfinal actions) rejected all of the 412 Patent's claims, and Andersen had submitted claim amendments.  (ECF No. 63-1.)  Andersen filed its opposition in May 2017, pointing out Judge Winmill's prior reliance on the three-to-five-years estimate for reexamination proceedings, and arguing that nothing had changed to justify revisiting the denial of the original motion to stay.  (ECF No. 64.)

Later in May 2017—before Judge Winmill ruled on the renewed motion to stay—Wyers filed a motion to transfer the lawsuit to the District of Colorado, relying on a United States Supreme Court decision from earlier that month, *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017).  (*See* ECF No. 67-1.)  *TC Heartland* held that, by statute, a domestic corporation can only be sued for patent infringement in the state of its incorporation or where it has committed acts of infringement and has a regular and established place of business.  137 S. Ct. at 1516–17 (construing 28 U.S.C. § 1400(b)).  Wyers, a Colorado corporation with its principal place of business here, accordingly argued for transfer.  (ECF No. 67-1.)  Andersen opposed, arguing that Wyers had already admitted that venue was appropriate, and that

4

the Supreme Court's change in the law was not sufficient to relieve Wyers of that admission. (ECF No. 69.)

Judge Winmill granted the motion to transfer in January 2018. (ECF No. 78.) The renewed motion to stay remained outstanding at that time. Shortly after transfer, U.S. Magistrate Judge Scott T. Varholak denied the renewed motion without prejudice, essentially reasoning that it was outdated in light of the lapse of time since its filing and the subsequent transfer. (ECF No. 90.)

Judge Varholak held a telephonic status conference on March 1, 2018.[3] Judge Varholak asked the parties for their positions on whether a new scheduling order was needed in light of the transfer. Counsel for Andersen stated that deadlines which had already passed, such as fact discovery, did not need to be reopened, but "it would make sense to push back" upcoming expert discovery deadlines and other unspecified "dates" in light of ongoing reexamination proceedings. In response, counsel for Wyers announced that Wyers would be filing a summary judgment motion the following week, "essentially closing the case based on the invalidity of all the original claims [of the 412 Patent] . . . as well as noninfringement of the two method claims [of the 510 Patent]." As for proceedings beyond that, counsel for Wyers asserted that any claims that might emerge from reexamination would be "new claims requiring new *Markman* [*i.e.*, a new claim construction hearing], new—a whole new case—and new, of course, invalidity [contentions], infringement contentions. It's a rewind."

Although counsel never fully finished the thought, his implication was clear: there should be no new deadlines because the original case would end (he believed) when

---

[3] No transcript of the status conference has been prepared. The Court, however, has listened to the audio recording, which is available through the Court's internal servers.

his forthcoming summary judgment motion was ruled upon, and any claims remaining in the 412 Patent following reexamination would be so different as to be new claims requiring a new lawsuit. Counsel for Andersen disagreed, characterizing the potentially amended claims as "very slightly amended."

Without weighing in on the parties' dispute, Judge Varholak decided to require the parties to prepare a new scheduling order, and he set a scheduling conference for April 11, 2018. (ECF No. 95.)

Wyers did not move for summary judgment the week after the telephonic status conference. Its counsel, however, had an e-mail exchange with Andersen's counsel about the forthcoming motion. Wyers's counsel announced that Wyers would move for summary judgment on essentially all possible bases. (ECF No. 130-1 at 3.) Andersen's counsel responded that

> Wyers' proposed summary judgment motion needlessly seeks to have the Court determine the same issue of invalidity currently being evaluated by the Patent Office, before the Patent Office has even had a chance to complete its evaluation.
>
> Moreover, because the reexamination proceedings are public, you have full access to the filings, and you know that Wyers' threatened motion is an utter waste of resources for another reason. The public filings show that Andersen filed claim amendments in connection with the '412 patent on March 2, 2018 and the '510 patent back on May 3, 2017. Those amendments indicate that Andersen is amending several original claims of the '412 and '510 patents. . . .
>
> In light of these pending amendments . . . Wyers knows to a certainty that its threatened motion for summary judgment to determine whether "all original claims . . ." are valid would senselessly burden the Court. There is no justification to demand that the Court adjudicate whether "original" claims that you know have been amended were valid in their original form . . . .

6

(*Id.* at 2.)  If Wyers's counsel replied to these accusations, the reply is not in the record.

Wyers filed its summary judgment motion on March 30, 2018.  (ECF No. 96.)  Five days later, the parties filed their proposed scheduling order.  (ECF No. 98.)  Andersen—contrary to its counsel's representation at the status conference—proposed reopening fact discovery with a deadline of "60 days after the currently pending reexaminations . . . are concluded."  (*Id.* at 10.)  Perhaps counsel intended this fact discovery to be directed only at the amended patent claims that they expected to emerge from reexamination.  In any event, Andersen further proposed that expert discovery deadlines be triggered by the end of fact discovery.  (*Id.* at 11.)  Wyers opposed these proposals because fact discovery had "already closed under the District of Idaho scheduling order."  (*Id.*)  It argued that affirmative expert disclosures should be due by May 7, 2018, with rebuttal expert disclosures due 30 days after that.  (*Id.*)  The parties agreed, however, that dispositive motions would be due "30 days after the close of expert discovery."  (*Id.* at 12.)[4]

At the April 11, 2018 scheduling conference, counsel for Andersen urged Judge Varholak to "push it off"—referring specifically to any trial, but also apparently referring to further pretrial proceedings—"until [the] reexamination process is complete."[5]  Counsel for Wyers, however, emphasized that his summary judgment motion would be ripe in May 2018 and, if not granted, he wanted a trial sometime over the summer of 2018.  Judge Varholak explained that Wyers's preferred schedule was not realistic and

---

[4] It is not clear if Wyers viewed this as a deadline to file *another* summary judgment motion, or, under the circumstances, simply a deadline for Andersen to file such a motion.  The answer is immaterial here.

[5] The Court again derives this information from the recording available on the Court's internal servers, because no transcript has been prepared.

7

he set deadlines culminating in a Final Pretrial Conference in October 2018. (*See* ECF No. 99 at 2; ECF No. 100 at 12.)

On April 20, 2018, Andersen filed its response in opposition to Wyers's summary judgment motion. (ECF No. 101.) In that response, Andersen represented as follows regarding the reexamination proceedings: "Although the patents-in-suit are currently in the process of being re-examined by the PTO, they, and all of their claims, continue to be valid and enforceable, and the ongoing re-examination proceedings have no relevance to this motion." (ECF No. 101 at 8 n.1.)

Wyers replied in support of its summary judgment motion on May 4, 2018 (ECF No. 102), thus making that motion ripe.

The parties had their October 2018 Final Pretrial Conference (ECF Nos. 109–10), and the Court soon after set a trial to begin on April 22, 2019 (ECF No. 111).

On February 7, 2019, the Court ruled on Wyers's summary judgment motion. (ECF No. 114.) The Court held that the only claims of the 412 Patent still in dispute were invalid because they had been anticipated by a prior art reference known as "Moss 472." (*Id.* at 8–16.) As for the 510 Patent, the Court held that no reasonable jury could find that Wyers infringed. (*Id.* at 16–21.) The Court therefore entered final judgment in favor of Wyers and terminated the case. (ECF No. 115.)

On March 6, 2019, the PTO issued a "Notice of Intent to Issue Ex Parte Reexamination Certificate" regarding the 412 Patent. (ECF No. 121-5 at 4.) That notice stated that the reexamination certificate would not confirm any original claim as-is, but would allow certain original claims as amended, along with some entirely new claims. (*Id.* at 4–5.)

The next day, Andersen filed motion currently under consideration, arguing that a reexamination certificate would issue shortly and so this case should be allowed to continue with respect to the 412 Patent as reexamined. (ECF No. 119.) The 412 Patent reexamination certificate in fact issued on April 22, 2019. (ECF No. 133-1.)

### III. ANALYSIS

Andersen argues, "because the ex parte reexamination of Plaintiff's asserted patents took far longer than expected, Plaintiff will not have the opportunity to assert the new reissue claims of the '412 patent against Defendant's products in this lawsuit, unless this Court grants relief from final judgment." (ECF No. 119 at 8.) Andersen appears to understand, however, that Rule 60(b)(6) is not intended to be used to relieve parties from their deliberate choices. *See Cashner*, 98 F.3d at 579–80. (*See also* ECF No. 119 at 7 (citing *Cashner*).) Andersen thus appears to also understand that it must overcome an obvious argument against granting Rule 60(b)(6) relief, namely, that Andersen opposed Wyers's two requests for a stay pending the conclusion of reexamination proceedings, yet Andersen now wants relief that amounts to effectively the same thing—to restart the case under the post-reexamination version of the 412 Patent.

Andersen explains that it opposed Wyers's motions to stay because it

> anticipated that only minor amendments to the claims would be necessary, that the reexamination process before the PTO would be concluded within in [*sic*] the ordinary time period, and that staying the case for the duration of a reexamination process appeared likely to cause unnecessary delay.
>
> However, as the reexamination of the '412 patent progressed, it became apparent that the reexaminations were progressing much more slowly than anticipated. Thus, Plaintiff sought to extend deadlines in this action so that the

> reexaminations could be completed. [Citing the proposed
> scheduling order submitted to Judge Varholak, ECF No. 98.]
> Defendant opposed that request and sought summary
> judgment of invalidity.

(*Id.* at 8.)

There are two troubling aspects to Andersen's explanation. First, regarding the "ordinary time period" for conclusion of PTO reexamination proceedings—and as a comparison to the approximately three years required for the 412 Patent reexamination proceedings—Andersen cites statistics that "[t]he median pendency of an ex parte reexamination is 19.4 months." (*Id.* at 4.) Yet Andersen twice represented to Judge Winmill that reexamination proceedings could take up to five years. (ECF No. 34 at 3; ECF No. 64 at 2.) So Andersen's own words when it opposed the motions to stay show that it indeed anticipated the potential for very long reexamination proceedings.

Second, after e-mailing Wyers's counsel to attempt to persuade them not to move for summary judgment based on Andersen's own amendments to the relevant claims, and in the approximately nine months that Wyers's summary judgment motion remained pending, Andersen never informed this Court of any reason to hold that motion in abeyance pending the outcome of reexamination. Andersen instead took the opposite position, that "the ongoing re-examination proceedings have no relevance to this motion." (ECF No. 101 at 8 n.1.)[6]

It appears the only thing Andersen did not predict was that this Court would grant Wyers's summary judgment motion and enter final judgment before reexamination

---

[6] In that same footnote, Andersen offered a case for the proposition that "where co-pending actions are 'neither duplicative nor dependent on one another, there is neither any need nor any justification' for a stay." (*Id.* (quoting *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998)).) This seems to contradict its representation that, by the time Wyers filed for summary judgment, a stay was appropriate.

proceedings would conclude.  That is not enough for Rule 60(b)(6) relief.  *Cf. Cashner*, 98 F.3d at 579–80 ("The only event not contemplated by Defendants was that the district court would disagree with their proffered interpretation of the settlement agreement, and that is not the kind of intervening event contemplated by Rule 60(b)(6).").

In any event, denying Rule 60(b)(6) relief will work no injustice because Andersen can file a new lawsuit asserting the post-reexamination claims of the 412 Patent.  Indeed, a new lawsuit is probably the cleaner, simpler approach given that the post-reexamination 412 Patent is, for most practical purposes, a new patent.[7]  Andersen seems to implicitly understand as much because it nowhere argues that it would suffer any statute of limitations consequences if required to file a new lawsuit.  *Cf*. 35 U.S.C. § 286 ("no recovery shall be had for any [patent] infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action").

## IV.  CONCLUSION

For the reasons set forth above, Andersen's Motion to Amend Judgment (ECF No. 119) is DENIED.

Dated this 23rd day of August, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

[7] The claims of the 412 Patent, as stated in the reexamination certificate, span approximately 200 lines of text.  (*See* ECF No. 133-1 at 7–8.)  The Court counts only 26 lines that retain any text from the original claims.

11